UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUES SAADE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 16-cv-11982-IT |
| | * |
| WILMINGTON SAVINGS FUND SOCIETY, | * |
| CHRISTIANA TRUST, PNMAC | * |
| MORTGAGE CO. LLC, PENNY MAC | * |
| SERVICING LLC, PENNYMAC MORTGAGE | * |
| INVESTMENT TRUST HOLDINGS I, LLC, | * |
| CITI MORTGAGE, MORTGAGE LENDERS | * |
| NETWORK USA, INC., SLS LLC, DEUTSCHE | * |
| BANK TRUST COMPANY DELAWARE, | * |
| MORTGAGE ELECTRONIC REGISTRATION | * |
| SYSTEMS, INC., BENDETT AND MCHUGH, | * |
| EVA MASSIMINO, NELSON MULLINS LLP, | * |
| and KEVIN POLANSKY, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

September 22, 2017

TALWANI, D.J.

Plaintiff Jacques Saade filed a Verified First Amended Complaint & Request for Injunctive Relief Demand for Jury Trial ["Amended Complaint"] [#14], alleging multiple causes of action against numerous Defendants. This order addresses Defendants Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins") and Kevin Polansky's Motion to Dismiss [#44], Defendant Bendett & McHugh's Motion to Dismiss [#75], and Plaintiff's Motion for Reconsideration [of] Entry of Default Against Bendett & McHugh ["Motion for Reconsideration"] [#74]. Other pending motions will be addressed in separate orders. For the reasons set forth below, Defendants Nelson Mullins and Polansky's Motion to Dismiss [#44] and

Defendant Bendett & McHugh's Motion to Dismiss [#75] are GRANTED. Plaintiff's Motion for Reconsideration [#74] is DENIED.

I.  Facts as Alleged in Plaintiff's Amended Complaint

In 2006, Plaintiff executed a promissory note and granted a mortgage (the "Mortgage") to Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") "as nominee for [Defendant Mortgage Lenders Network USA, Inc. ("MLN")] and [MLN]'s successors and assigns."  Am. Compl. ¶ 26 [#14]; Id. Ex. 2 [#14-2]. The Mortgage prescribed a three-year fixed interest rate; after three years, the interest rate would adjust every six months to a rate of 2.25% plus the 6-month LIBOR rate. Am. Compl. ¶ 28 [#14]. Plaintiff alleges that in 2009, after a dispute with his mortgage servicer, Defendant CitiMortgage, Inc. ("CitiMortgage"), regarding the correct interest rate, the parties agreed to a loan modification. Id. ¶ 29-32, 40. In April 2011, CitiMortgage transferred servicing of the Mortgage to Defendant Specialized Loan Servicing LLC ("SLS"). Id. ¶ 33. Thereafter, but also in April 2011, SLS notified Plaintiff that he was in default, and that SLS was seeking to foreclose on his property. Id. ¶¶ 33, 40, 44. On May 2, 2011, CitiMortgage informed Plaintiff that it could not approve his loan modification request because "the subject loan . . . was paid off on 29-APR-2011." Id. Ex. 4 [#14-2].

On June 19, 2012, MERS assigned the Mortgage to Defendant PNMAC Mortgage Co. LLC ("PNMAC"), and PNMAC assigned the Mortgage to PennyMac Loan Trust 2011-NPL1. Am. Compl. ¶ 47 [#14]; Id. Ex. 9 [#14-2]. On or about January 15, 2015, PennyMac Loan Trust 2011-NPL1 assigned the Mortgage to Defendant Christiana Trust. Am. Compl. ¶ 50 [#14].

In March 2015, Plaintiff received a "Right to Cure" notice pursuant to Mass. Gen. Laws ch. 244, § 35A from Bendett & McHugh, on behalf of its client, Defendant PennyMac Loan Services, LLC ("PennyMac"). Id. ¶ 52. On February 16, 2016, PennyMac sent Plaintiff a letter

stating that it had approved the Mortgage for a Trial Plan Period ("TPP"). Id. ¶ 58, 60; Id. Ex. 6 [#14-2]. On April 2, 2016, PennyMac sent Plaintiff a notice requesting that, due to a change in flood requirements, Plaintiff obtain insurance coverage for flood hazard. Am. Compl. ¶ 56 [#14]; Id. Ex. 5 [#14-2]. In response to these notifications, Plaintiff sent multiple demand letters to PennyMac. Am. Compl. ¶¶ 53-55, 59, 62 [#14].

Plaintiff alleges that sometime in the summer of 2016, he and Polansky, an attorney at Nelson Mullins, entered into negotiations to resolve the dispute over the Mortgage. Id. ¶¶ 64-67. While negotiations were ongoing, Eva Massimino, an associate attorney at Bendett & McHugh, initiated an action in Massachusetts Land Court relating to the Mortgage on behalf of Bendett & McHugh's client Christiana Trust. Id. ¶¶ 66-70.

II.     Procedural History Related to the Instant Motions

Plaintiff filed his Complaint on October 3, 2016, and attempted to serve the summons and complaint on Bendett & McHugh on October 5, 2016, by way of a package addressed to Massimino at Bendett & McHugh's Farmington, Connecticut location. Proof of Service Upon Def. Bendett & McHugh [#40]. On October 12, 2016, he filed and mailed to Bendett & McHugh his Amended Complaint [#14].

On February 14, 2017, Plaintiff filed a Request for Entry of Default Against Defendant Bendett & McHugh [#67]. Plaintiff stated that default judgment should enter against Bendett & McHugh for its failure to plead or otherwise defend against the action. Id. He stated that he had "caused the summons and complaint to be mailed to defendant Bendett & McHugh" on or about October 5, 2016. He also provided his proof of service, which showed that a package addressed to Massimino at Bendett & McHugh's Farmington, Connecticut location had been signed for on October 6, 2016. In response, Bendett & McHugh filed an Objection to Plaintiff's Request for

3

Default and Motion for Leave to File Out-of-Time Response to Plaintiff's Amended Complaint [#71]. Bendett & McHugh stated that default judgment should not enter because Plaintiff's service was faulty for two reasons. First, although Massimino received the mail addressed to her, it did not include a summons. Id. Ex. A, Aff. Of Eva M. Massimino, Esq. ["Massimino Aff."] ¶¶ 2-3 [#71-1]. Further, Massimino was not an officer of the firm and was not otherwise authorized to accept service on behalf of the firm. Id. ¶¶ 4-5. The court denied Plaintiff's request for entry of default, explaining that service of Bendett & McHugh was not proper because Massimino was not authorized to accept service on its behalf. Order [#72]. As a result of the defective service, the court granted Bendett & McHugh's request to file a late answer or other response. Id.

On March 20, 2017, Plaintiff filed the pending motion asking the court to reconsider its Order [#72] denying his request for entry of default. Mot. for Reconsideration [#74]. On March 24, 2017, Bendett & McHugh filed the pending Motion to Dismiss [#75], which Plaintiff opposed. Opp'n to Def. Bendett & McHugh's Mot. to Dismiss [#77].

Meanwhile, Defendants Nelson Mullins and Polansky filed a Motion to Dismiss [#44] on December 28, 2016, which Plaintiff opposed on January 11, 2017. Opp'n Defs.' Dec. 28th Mot. Dismiss [#51].

III. Causes of Action

The Amended Complaint contains the following causes of action[1] against Defendants Nelson Mullins, Polansky, and/or Bendett & McHugh:

- Count 1: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and 209 C.M.R. § 18.16(6), with respect to the parties' loan modification negotiations and the filing of a Servicemembers Action, against, among others, Polansky. Am. Compl. ¶¶ 74-100 [#14].

---

[1] Saade mis-numbered the counts in the amended complaint. The court will refer to the counts as listed above.

- Count 3: Laches, against all defendants. Id. ¶¶ 109-115.

- Count 22: Violations of Mass. Gen. Laws ch. 244, §§ 35A & 35B, and Chapter 93A, with respect to filing the Servicemembers Action, against Bendett & McHugh. Id. ¶¶ 266-277.

- Count 23: Violations of Mass. Gen. Laws ch. 244, §§ 35A & 35B, and Chapter 93A, with respect to filing the Servicemembers Action, against Nelson Mullins. Id. ¶¶ 278-291.

- Count 25: Injunctive relief, requesting that this court order Defendants to terminate the Servicemembers Action. Id. ¶¶ 299-308.

IV. Analysis

A. *Motion for Reconsideration*

The court first addresses Plaintiff's Motion for Reconsideration [#74]. A court has discretion to reconsider an interlocutory order, see Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994), but should "be loathe to" do so "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice," Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). In considering a motion for reconsideration, courts "must balance the need for finality against the duty to render just decisions." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000). To complete such a balancing test, courts look to whether the moving party has shown (1) an intervening change in the law, (2) newly discovered evidence not previously available, or (3) a clear error of law. Id.; see also United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).

Plaintiff does not point to any intervening change in the law. Instead, he bases his motion for reconsideration on what he asserts is newly discovered evidence and a resulting error in this court's legal analysis. Specifically, Plaintiff raises the fact that Massimino, the associate to whom the service package was addressed, is herself a defendant in this action, and he argues that addressing Bendett & McHugh's service of the summons and original complaint to her was therefore proper. Although Plaintiff did not name Massimino in the original complaint, she is

5

named in the body of the First Amended Complaint (which was filed after the attempted service occurred). Plaintiff did not previously raise this fact with the court, though it was known and available to him at the time he filed his motion for default judgment.

Further, even if Plaintiff had pointed out that Massimino was named in the First Amended Complaint, that fact would not have changed this court's analysis. Service upon Massimino still does not constitute service upon Bendett & McHugh for the reasons previously identified in the court's prior Order [#72]—namely, she is neither authorized to receive service on Bendett & McHugh's behalf, nor the person in charge of Bendett & McHugh's principal place of business. Id. at 1-2. That Plaintiff subsequently named her in the Amended Complaint after service purportedly took place does not elevate her position at Bendett & McHugh. Thus, this court's prior order is not a clear error of law, and Plaintiff's Motion for Reconsideration [#74] is DENIED.

B.  *Motions to Dismiss*

To survive a motion to dismiss, a complaint must include factual allegations that, taken as true, demonstrate a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007). A plausible claim is one containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To assess a complaint, the court first "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016) (citation omitted). The court must then "determine whether the remaining facts allow it to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

6

The Amended Complaint asserts Counts 3, 22, and 25[2] against Defendant Bendett & McHugh, Am. Compl. ¶¶ 109-115 (Count 3), ¶¶ 266-277 (Count 22), ¶¶ 299-308 (Count 25) [#14], and Counts 1, 3, 23, and 25 against Defendants Nelson Mullins and/or Polanksy, id. ¶¶ 74-100 (Count 1), ¶¶ 109-115 (Count 3), ¶¶ 278-291 (Count 23), ¶¶ 299-308 (Count 25).

With respect to Count 3, Plaintiff alleges that "defendants waited until the statute of limitation lapsed and then proceeded with unlawful foreclosure proceedings on a disputed alleged debt and voided mortgage." Id. ¶ 110. He alleges that, as a result, "Defendants are precluded to proceed in such foreclosure proceedings under the doctrine of laches." Id. ¶ 111. The doctrine of laches is inapplicable, however. "The equitable doctrine of laches is an affirmative defense that serves as a bar to a claim for equitable relief 'where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party.'" Murphy v. Timberlane Reg'l Sch. Dist., 973 F.2d 13, 16 (1st Cir. 1992) (quoting K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989)). In other words, laches is a shield, not a sword. While Plaintiff may be able to use laches as an affirmative defense to a lawsuit brought against him, he cannot use laches as the basis for a claim against a defendant. Count 3 must be dismissed.

Counts 1, 22, 23, and 25 relate to the filing of a servicemember action in Massachusetts Land Court in August 2016. The Massachusetts Soldiers' and Sailors' Civil Relief Act ("SCRA") "provides a procedural framework for ascertaining whether mortgagors are entitled to protections under the [Federal] SCRA." HSBC Bank USA, N.A. v. Matt, 981 N.E.2d 710, 713-

---

[2] Bendett & McHugh, Nelson Mullins, and Polansky do not construe Count 3 (laches) or Count 25 (injunctive relief) against themselves. However, Saade did not specify the defendants against whom Count 3 and Count 25 were asserted. Further, the facts referenced as giving rise to Count 3 and Count 25 stem from actions taken by Bendett & McHugh, Nelson Mullins, and Polansky surrounding the filing of the servicemembers action. Therefore, this court will consider Count 3 and Count 25 as alleged against Bendett & McHugh, Nelson Mullins, and Polansky.

14 (Mass. 2013). The purpose of the SCRA is to protect servicemembers from "judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service," including foreclosures conducted without a court order or agreement between the parties. Id. at 714. Thus, "in Massachusetts, a mortgagee seeking to assure compliance with the SCRA prior to commencing foreclosure proceedings could bring an action to obtain an appropriate court order." Id. Such proceedings are commonly referred to as "servicemember proceedings" or "servicemember actions" and they "occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure." Id. at 715 (citation omitted). Thus "a servicemember proceeding is neither a part of nor necessary to the foreclosure process; it simply ensures that a foreclosure will not be rendered invalid for failure to provide the protections of the SCRA to anyone so entitled." Id.

In Count 1, Plaintiff alleges that Polansky violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., by negotiating a potential resolution to the dispute with Plaintiff while the servicemembers action was ongoing. Am. Compl. ¶¶ 91-100 [#14]. To show a violation of the FDCPA, a plaintiff must establish "(1) that []he was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 30 (D. Mass. 2014). A "debt collector" is defined as a person engaged in business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, direct or indirectly, debts." 15 U.S.C. § 1692a(6). Plaintiff has not alleged any facts indicating that Polansky meets this definition, and therefore, his conclusory statements that Polansky is a "debt collector" are insufficient. Further, even if Polansky was a debt collector under the FDCPA, Plaintiff has not tied Polansky to the filing of the

servicemember action. And even if Polansky was involved in filing a servicemember action, Plaintiff has offered no facts to suggest the filing of a servicemember action is prohibited by the FDCPA. Count 1 must be dismissed.

With respect to Count 23, Plaintiff alleges that Nelson Mullins violated Mass. Gen. L. ch. 244, § 35A ("Section 35A"). Am. Compl. ¶¶ 278-291 [#14]. Section 35A provides that a mortgagor "shall have a 90-day right to cure a default"[3] of a mortgage, during which time the mortgagee is prohibited from accelerating the "maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default." Id. § 35A(b), (g). To the extent Plaintiff complains about the right to cure notice he received in March 2015, Am. Compl. ¶ 52 [#14], Plaintiff has not alleged any facts tying Nelson Mullins (or Polansky) to that notice, which he states he received from Bendett & McHugh. To the extent Plaintiff complains about the filing of the servicemember action, he has not alleged that Nelson Mullins (or Polansky) had any role in such filing. The remaining conduct about which he complains—Polansky's negotiations with Plaintiff while the servicemember action was pending—is neither controlled by Section 35A nor improper. Count 23 must be dismissed.

Plaintiff alleges in Count 22 that Bendett & McHugh violated Section 35A, Mass. Gen. L. ch. 244, § 35B ("Section 35 B"), and Mass. Gen. L. ch. 93A ("Chapter 93A"), by filing a servicemember action while Plaintiff was negotiating a potential resolution to the disputed debt. Id. ¶¶ 267-268. With respect to Section 35A, Plaintiff challenges the sufficiency of the right to cure notice he received from Bendett & McHugh in March 2015, stating that it "failed to provide the required information." Id. ¶ 270. But he does not explain what information was excluded from the notice. Further, nothing in Section 35A or elsewhere prohibited Bendett & McHugh

---

[3] At the time Plaintiff received a right to cure notice, Section 35A provided 150 days to cure the default.

9

from filing a servicemember proceeding on behalf of its client Christiana Trust during the pendency of the right to cure period, or at any time thereafter. Thus, to the extent Count 22 is based on Section 35A, it fails.

Section 35B provides that "a creditor shall not cause publication of notice of a foreclosure sale, as required by section 14, upon certain mortgage loans unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure." Id. § 35B(b). Plaintiff alleges that the servicemember action filed by Bendett & McHugh on Christiana Trust's behalf constituted a foreclosure publication, in violation of Section 35B. See, e.g., Am. Compl. ¶ 67 [#14]. But as explained above, a servicemember action is separate from the foreclosure process, and thus filing such action cannot constitute foreclosure publication. On this ground too, Count 22 fails.

Chapter 93A declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2(a). Individuals have a private right of action via Chapter 93A, Section 9. To prove a claim under Chapter 93A, a plaintiff must show "that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011). Conduct is considered deceptive when it has "[t]he capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted. Foley v. Wells Fargo, N.A., No. 1:13-cv-12107-LTS, 2017 WL 1591835, at *8 (D. Mass. May 1, 2017) (quotation omitted). To determine whether conduct is unfair, courts look to "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3)

10

whether it causes substantial injury to consumers (or competitors or other businessmen)." Id. (quotation omitted).

Plaintiff alleges that Bendett & McHugh's filing of the servicemember action constituted an unfair or deceptive act or practice. Beyond failing to show how such filing resulted in any loss of money or property, Plaintiff also fails to articulate in other than conclusory fashion how such filing—intended to ensure the preservation of the rights of any servicemembers—rose to the level of wrongful conduct, let alone "immoral, unethical, oppressive, or unscrupulous" conduct. As a result, Count 22 fails to state a claim under any statutory scheme Plaintiff has articulated.

Finally, in Count 25, Plaintiff seeks injunctive relief ordering Bendett & McHugh, Nelson Mullins, and Polansky to dismiss the servicemember action. Am. Compl. ¶ 308 [#14]. But "injunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Payton v. Wells Fargo Bank, N.A., No. Civ. A. 12-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013). And, as noted above, there is no underlying stand-alone cause of action to support such relief. Thus, Count 25 fails.

Because all counts against Nelson Mullins, Polansky, and Bendett & McHugh must be dismissed, Nelson Mullins' and Polansky's Motion to Dismiss [#44] and Bendett & McHugh's Motion to Dismiss [#75] are therefore GRANTED.

V.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration [#74] is DENIED and Defendants Nelson Mullins and Polansky's Motion to Dismiss [#44] and Defendant Bendett & McHugh's Motion to Dismiss [#75] are GRANTED.

IT IS SO ORDERED.

September 22, 2017                    /s/ Indira Talwani
                                      United States District Judge

11