UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUES SAADE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 16-cv-11982-IT |
| | * |
| WILMINGTON SAVINGS FUND SOCIETY, | * |
| CHRISTIANA TRUST, PNMAC | * |
| MORTGAGE CO. LLC, PENNY MAC | * |
| SERVICING LLC, PENNYMAC MORTGAGE | * |
| INVESTMENT TRUST HOLDINGS I, LLC, | * |
| CITI MORTGAGE, MORTGAGE LENDERS | * |
| NETWORK USA, INC., SLS LLC, DEUTSCHE | * |
| BANK TRUST COMPANY DELAWARE, | * |
| MORTGAGE ELECTRONIC REGISTRATION | * |
| SYSTEMS, INC., BENDETT AND MCHUGH, | * |
| EVA MASSIMINO, NELSON MULLINS LLP, | * |
| and KEVIN POLANSKY, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

September 26, 2017

TALWANI, D.J.

I.  Introduction

Currently pending before this court are the Motion to Dismiss [#42] by Wilmington Savings Fund Society, FSB ("Wilmington"), Christiana Trust, PNMAC Mortgage Co. LLC ("PNMAC"), PennyMac Loan Services, LLC ("PennyMac"), PennyMac Mortgage Investment Trust Holdings I, LLC ("PennyMac Holdings"), Deutsche Bank as Trustee of PennyMac Loan Trust 2011-NPL1 ("Deutsche Bank Trustee"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Specialized Loan Servicing LLC ("SLS") (collectively, the "PennyMac Defendants") and Defendant CitiMortgage's Motion to Dismiss [#57]. Both motions seek

dismissal of Plaintiff Jacques Saade's Verified First Amended Complaint & Request for Injunctive Relief Demand for Jury Trial ["Amended Complaint"] [#14] based on *res judicata* and other grounds. Also pending is Plaintiff's Motion to Strike Defendants' Motion to Dismiss ["Motion to Strike"] [#66]. For the reasons set forth below, Plaintiff's Motion to Strike [#66] is DENIED, and Defendant CitiMortgage's Motion to Dismiss [#57] is GRANTED. The PennyMac Defendants' Motion to Dismiss [#42] is GRANTED with respect to Counts 1-6, 8, 10-14, 16-21, and 24-25. The court reserves ruling on whether Count 9 should be dismissed, and will set a hearing with respect to the issue identified below.

II.     Plaintiff's Motion to Strike

Plaintiff asked this court to strike the PennyMac Defendants' motion to dismiss as untimely, and to enter default judgment against them pursuant to Federal Rule of Civil Procedure 55. Mot. to Strike 6 [#66]. Plaintiff notes that he filed this action on October 3, 2016, and that the PennyMac Defendants did not file their motion to dismiss until December 20, 2016. Id. at 1, 3-4.

The record shows no attempt to serve any of the PennyMac Defendants, other than Defendant Christiana Trust, and thus no facts to suggest that the unserved PennyMac Defendants failed to timely defend this action.

Plaintiff does claim to have served Christiana Trust, while the PennyMac Defendants assert that the purported service was improper. The court need not resolve this dispute. Even if Plaintiff had properly served Christiana Trust on October 12, 2016, he did not file an Affidavit of Service until December 13, 2016. Once the claim of service was filed, the PennyMac Defendants promptly filed their motion to dismiss on December 20, 2016.

Federal Rule of Civil Procedure 55(a) states that where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

2

is shown by affidavit or otherwise, the clerk must enter the party's default." After such entry of default by the clerk, the plaintiff may seek a default judgment. Fed. R. Civ. P. 55(b). Here, the PennyMac Defendants have defended this action prior to service or attempted service on all but one of them, and as to that one, moved prior to any clerk's entry of default, and prior to Plaintiff seeking entry of default judgment. The court finds no basis for a default judgment and accordingly, Plaintiff's Motion to Strike [#66] is DENIED.

III.     Defendants' Motions to Dismiss

    A.     *Legal Standard*

To survive a motion to dismiss, a complaint must include factual allegations that, taken as true, demonstrate a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007). A plausible claim is one containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To assess a complaint, the court first "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016) (citation omitted). The court must then "determine whether the remaining facts allow it to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

This court can, in an appropriate case, consider the affirmative defense of *res judicata* on a Rule 12(b)(6) motion to dismiss. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). An appropriate case is one in which (1) "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice," and (2) "the facts so gleaned [] conclusively establish the affirmative defense."

3

Id. In deciding a Rule 12(b)(6) motion to dismiss, a court is ordinarily limited to considering "only the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014). The court can also consider matters of public record, Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013), including the record of the purportedly preclusive action where a "motion to dismiss is premised on a defense of *res judicata*." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008).

  B. *Plaintiff's Factual Allegations*

A review of the facts alleged in the Amended Complaint is set forth in the Memorandum & Order [#78].

  C. *The PennyMac Defendants' Motion to Dismiss*[1]

The Amended Complaint asserts the following claims against the PennyMac Defendants: Counts 1-6, 8-14, 16-21, and 24-25. The PennyMac Defendants have moved to dismiss each of the counts against them in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

    1. Res Judicata

The PennyMac Defendants argue first that the doctrine of *res judicata* precludes Plaintiff from asserting his claims here.

Plaintiff has filed two prior actions regarding his mortgage (the "Mortgage"). First, in April 2015, Plaintiff filed a complaint in Massachusetts state court against the PennyMac

---

[1] On January 3, 2017, Plaintiff filed an Opposition to Defendants' December 20th Motion to Dismiss [#48]. In that opposition, Plaintiff requested leave to file further opposition to the PennyMac Defendants' motion to dismiss by January 11, 2017. Id. at 1. The court granted that request, and ordered Plaintiff to file his further opposition on or before January 11, 2017. Elec. Order [#49]. Plaintiff did not file a further opposition by the date allowed by the court, but included further argument with his Motion to Strike [#66], filed a month later. The court has considered Plaintiff's arguments in both his original opposition and the motion to strike.

Defendants, CitiMortgage, and other defendants. That action was removed to this court, Plaintiff's motion to remand was denied, and on October 14, 2015, Plaintiff filed his Second Amended Complaint. The Second Amended Complaint was eventually dismissed, and the case was closed. See Saade v. PennyMac Loan Services, LLC, 15-cv-12275-IT (D. Mass.) (the "First Action"), Notice of Removal [#1]; Order Denying Remand [#14]; Second Amended Complaint [#56]; Mem. & Order [#116]; Order Dismissing Case [#127].

After Plaintiff's motion to remand the First Action was denied, Plaintiff filed a second action in Massachusetts state court against the PennyMac Defendants, CitiMortgage, and MLN. On October 13, 2015, Plaintiff filed an amended complaint. The second action was then removed to this court and eventually dismissed, and the case was closed. Saade v. PennyMac Loan Services, LLC, 15-cv-13611-IT (D. Mass.) (the "Second Action"), Notice of Removal [#1]; Mem. & Order [#38]; Order [#40]; Order Dismissing Case [#42]. Plaintiff's appeals of both dismissals are currently pending before the First Circuit. Notice of Appeal [15-cv-12275, #130]; Notice of Appeal [15-cv-13611, #44].

Where "both the potentially precluding suit and the potentially precluded suit were litigated in federal courts, federal law governs the *res judicata* effect of the prior judgment." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) ("Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all

5

matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment."). A *res judicata* defense precludes litigation of a party's claims when the following elements have been established: (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two actions. Mass. Sch. of Law at Andover, 142 F.3d at 37. As set forth below, except as to the claims based on events occurring after October 2015, all three elements of *res judicata* are satisfied with respect to the claims against the PennyMac Defendants.

First, the court in the First and Second Actions entered a final judgment on the merits by allowing Defendants' motion to dismiss. See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (citing AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005)) (holding that dismissal for failure to state a claim is "plainly a final judgment on the merits"). The parties are also sufficiently identical, given that the PennyMac Defendants were all named as defendants in the First and Second Actions.

In addition, except for the claims based on events occurring after the operative complaints in the first two actions were filed in October 2015, the causes of action articulated in the instant action and the First and Second Actions are sufficiently identical. Causes of action are sufficiently identical when they "derive . . . from the same transaction or series of connected transactions." McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006) (internal quotation marks omitted); see also Mass. Sch. of Law at Andover, 142 F.3d at 38 ("[The transactional approach] boils down to whether the causes of action arise out of a common nucleus of operative facts."). "Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction . . ., then those

facts represent one cause of action." Herman v. Meiselman, 541 F.3d 59, 62 (1st Cir. 2008) (quoting Apparel Art Int'l, 48 F.3d at 583-84). To determine whether a common nucleus of operative facts exists, courts "routinely ask whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Mass. Sch. of Law at Andover, Inc., 142 F.3d at 38 (citation and internal quotation marks omitted).

As an initial matter, several of the claims in the instant action are identical to those presented in both the First and Second Actions. For example, Plaintiff asserts three claims for breach of contract and fraudulent assignment with respect to the various assignments of his mortgage, see Am. Compl. ¶¶ 229-255 (Counts 18-20) [#14], having previously done so in both prior actions, see First Action, Second Am. Compl. ¶¶ 214-238 (Counts 6-8) [15-cv-12275, #56]; Second Action, Am. Compl. ¶¶ 167-198 (Counts 1-3), ¶¶ 215-219 (Count 8) [15-cv-13611, #1-1]. He also brings claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, some of which he asserts give rise to claims under Massachusetts General Laws ch. 93A ("Chapter 93A"), regarding the PennyMac Defendants' assignments and servicing of his mortgage, each of which he raised in the First Action.[2] Compare Am. Compl. ¶¶ 74-100 (Count 1), ¶¶ 116-141 (Counts 4-6) [#14]; with First Action, Second Am. Compl. ¶¶ 199-213 (Counts 4-5), ¶¶ 239-250 (Count 9) [15-cv-12275, #56]. Plaintiff also raises a laches claim in all three actions. See Am. Compl. ¶¶ 109-115 (Count 3) [#14]; First Action, Second Am. Compl. ¶¶ 271-275 (Count 13) [15-cv-

---

[2] In Counts 1 and 4, Plaintiff also argues that the PennyMac Defendants have violated the Massachusetts debt collection regulations, 209 C.M.R. § 18.16 and 940 C.M.R. § 7.04. See Am. Compl. ¶¶ 74-100 (Count 1), ¶¶ 116-128 (Count 4) [#14]. To the extent Plaintiff did not reference such regulations in the First Action, those claims could have been raised, and are thus barred by *res judicata*. See Allen, 449 U.S. at 94.

7

12275, #56]; Second Action, Am. Compl. ¶¶ 243-248 (Count 10) [15-cv-13611, #1-1]. As a result, Counts 1, 3-6, and 18-20 are barred by *res judicata*.

Moreover, although the remaining counts against the PennyMac Defendants are being brought for the first time, several of those claims "could have been raised in [the prior] action[s]." Allen, 449 U.S. at 94. Plaintiff now seeks to argue that the PennyMac Defendants breached their duty of good faith and reasonable diligence with respect to the various mortgage assignments, Am. Compl. ¶¶101-108 (Count 2) [#14], and the interest rate applied to the mortgage, id. ¶¶ 222-228 (Count 17). He also seeks declaratory judgment regarding the total amount of his existing debt on his mortgage. Id. ¶¶ 292-298 (Count 24). But Plaintiff had a "full and fair" opportunity to raise such claims when he twice complained about the same set of facts. See Airframe Sys., Inc., 601 F.3d at 15 (stating that inquiry regarding whether "causes of action are sufficiently identical or related for claim preclusion purposes . . . does not turn on the labels the plaintiff attaches to [his] various claims"). As a result, Counts 2, 17, and 24 are also barred by *res judicata*.

        2.        Other Grounds

Plaintiff also asserts a number of claims against the PennyMac Defendants based on events that occurred after the October 2015 filing of the operative complaints in the First and Second Actions. For example, Plaintiff now brings claims based on a February 16, 2016, letter regarding a loan modification proposal, see Am. Compl. ¶¶ 162-170 (Count 9) [#14], an April 2, 2016, letter directing Plaintiff to seek flood insurance, see id. ¶¶ 154-161 (Count 8), and the filing of a servicemember action in Massachusetts Land Court on August 1, 2016, see id. ¶¶ 74-100 (Count 1), ¶¶ 171-208 (Counts 10-14), ¶¶ 214-221 (Count 16), ¶¶ ¶¶ 256-265 (Count 21), ¶¶ 299-308 (Count 25). Insofar as these claims are based on new transactions, the court finds

8

Plaintiff's claims not barred by *res judicata*. The court now considers whether Plaintiff has alleged facts sufficient to state claims based on those new events.

a. February 16, 2016, Letter Regarding a Trial Plan Period

In Count 9, Plaintiff alleges that PennyMac violated the FDCPA by sending him a letter on February 16, 2016, regarding an offered Trial Plan Period for the Mortgage. To show a violation of the FDCPA, a plaintiff must establish "(1) that []he was the object o-f collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (internal citation and quotation marks omitted). Plaintiff points to two statutory provisions that PennyMac allegedly violated: (1) 15 U.S.C. § 1692c(c), which states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt."[3] A communication may give rise to liability if it is sent in connection with the collection of any debt; it need not expressly state a demand for payment. See LeDoux v. JP Morgan Chase, N.A., No. 12-cv-260-JL, 2012 WL 5874314, at *8 (D.N.H. Nov. 20, 2012).

Plaintiff has alleged that in 2011, he was notified that his Mortgage was in default. He has also alleged that PennyMac, who obtained the Mortgage after Plaintiff was notified that the

---

[3] Plaintiff also alleges that PennyMac violated 15 U.S.C. § 1692e(10), which states that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. . . . [including] [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To support his claim, Plaintiff states that PennyMac sent the February 16, 2016, letter "so it can submit an affidavit of compliance of G.L.c 244 §§ 35A and 35B," and "to facilitate their unlawful foreclosure proceedings specifically filing the Land Court Action detailed below." Am. Compl. ¶¶ 166, 168 [#14]. Such vague, speculative allegations do not allow for a "reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, Count 9 cannot survive on the basis of 15 U.S.C. § 1692e(10).

9

Mortgage was in default, is a debt collector. See McCusker v. Ocwen Loan Servs., LLC, No. 14-cv-13663-MGM, 2015 WL 4529986, at *2 (D. Mass. July 27, 2015) (concluding that mortgage servicer defendant qualified as debt collector under FDCPA where "loan was in default when [defendant] received it"). Finally, he has alleged that prior to receiving the February 16, 2016, letter from PennyMac, he notified PennyMac in writing that he wished PennyMac to cease further communication regarding the Mortgage. See, e.g., Am. Compl. ¶¶ 52-54 [#14]. The PennyMac Defendants primarily assert that Count 9 should be dismissed as barred by *res judicata*, and make only passing reference to the underlying merits of the claim. Accordingly, the court finds that oral argument on the underlying merits of Count 9, specifically with respect to whether Plaintiff has stated facts sufficient to support a claim that PennyMac violated 15 U.S.C. § 1692c(c), would be instructive, and will reserve ruling on whether Count 9 survives until after such oral argument.

b. April 2, 2016, Letter Regarding Flood Insurance

In Count 8, Plaintiff asserts that the PennyMac Defendants violated RESPA by obtaining force-placed flood insurance on his property. To prove a RESPA claim, a plaintiff must show "(1) that the servicer failed to comply with the statute's [] rules; and (2) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure." O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 35 (D. Mass. 2014) (citation omitted). To allege actual damages, "a plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages." Foregger v. Residential Credit Solutions, Inc., No. 12-cv-11914-FDS, 2013 WL 6388665, at *4 (D. Mass. Dec. 5, 2013). Plaintiff may also recover statutory damages by alleging that defendants were engaged in a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f). Here, Plaintiff points to two statutory provisions with which the PennyMac Defendants allegedly

failed to comply: (1) that a mortgage servicer shall not "obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance," 12 U.S.C. § 2605(k)(1)(A); and (2) that "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." Id. § 2605(m).

Plaintiff's claim is defective for several reasons. First, the April 2, 2016, letter upon which he bases his claim does not show that the PennyMac Defendants ever force-placed flood insurance on his property. Rather, the April 2, 2016, letter states only that the PennyMac Defendants learned of "a change in the Federal Emergency Management Agency (FEMA) maps which affect your property," that "[w]e are required by law to notify you at any time during the life of your loan if we become aware of a change in the flood requirements," and that Plaintiff should "contact an insurance agent or carrier as soon as possible to obtain flood coverage." Am. Compl. Ex. 5 [#14-2]. Second, even assuming the PennyMac Defendants force-placed flood insurance on his property, Plaintiff has not alleged that they did not possess a "reasonable basis to believe" that he had failed to maintain property insurance, or that the insurance obtained was not bona fide and reasonable. Finally, Plaintiff has not made any allegations entitling him to damages. Plaintiff alleged that he was "damaged by the defendants' conducts," see Am. Compl. ¶ 159 [#14], but does not explain how. Nor does he allege a pattern or practice of noncompliance. Accordingly, Count 8 fails to state a claim upon which relief may be granted, and must be dismissed.

### c. August 1, 2016, Filing of a Servicemember Action

The remainder of Plaintiff's claims relate to the PennyMac Defendants' filing of a servicemember action on August 1, 2016.[4] First, Plaintiff complains in Counts 1, 10, and 21 that the filing of a servicemember action violates the FDCPA (and corresponding Massachusetts regulations). Specifically, he alleges that such action violates 15 U.S.C. § 1692e(10), because it is a "false, deceptive, or misleading representation or means in connection with the collection of any debt," and 15 U.S.C. § 1692(f)(6), because such action constitutes a "nonjudicial action to effect dispossession or disablement of property." But a servicemember action is not part of the debt collection process. See HSBC Bank USA, N.A. v. Matt, 981 N.E.2d 710, 713-15 (Mass. 2013) ("[A] servicemember proceeding is neither a part of nor necessary to the foreclosure process; it simply ensures that a foreclosure will not be rendered invalid for failure to provide the protections of the SCRA to anyone so entitled"). Therefore, the filing of such an action cannot give rise to a claim under the FDCPA, and on that ground, Counts 1, 10, and 21 must fail.

As alternative grounds for relief in Counts 10 and 11, Plaintiff alleges that the filing of a servicemember action violates Mass. Gen. Laws ch. 244 §§ 35A ("Section 35A") and 35B ("Section 35B"), and Chapter 93A.[5] Section 35A provides that a mortgagor "shall have a 90-day right to cure a default"[6] of a mortgage, during which time the mortgagee is prohibited from accelerating the "maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default." Id. § 35A(a), (b). Plaintiff challenges the sufficiency of the right to cure notice he received from Bendett & McHugh (on PennyMac and Christiana

---

[4] A general explanation of a servicemember action is set forth in the Memorandum & Order [#78].
[5] With respect to Count 10, Plaintiff also lists Massachusetts General Laws ch. 244 § 35C ("Section 35C") as a ground for relief. However, he does not include any factual allegations tying Defendants' conduct to Section 35C in the body of the Amended Complaint, and therefore, he fails to state a claim for relief under Section 35C. See Iqbal, 556 U.S. at 678.
[6] At the time Plaintiff received a Section 35A right to cure notice, Section 35A provided 150 days to cure the default.

Trust's behalf) in March 2015, stating that it "failed to provide the required information." Am. Compl. ¶ 270 [#14]. But Plaintiff does not explain what information was excluded from the notice. Further, nothing in Section 35A prohibited Christiana Trust from filing a servicemember proceeding during the pendency of the right to cure period, or at any time thereafter. Thus, Section 35A does not provide a ground for relief.

Section 35B provides that "a creditor shall not cause publication of notice of a foreclosure sale, as required by section 14, upon certain mortgage loans unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure." Plaintiff alleges that the servicemember action filed by Bendett & McHugh on Christiana Trust's behalf constituted a foreclosure publication, in violation of Section 35B. See, e.g., Am. Compl. ¶¶ 67 [#14]. But as explained above, a servicemember action is separate from the foreclosure process, and thus filing such action cannot constitute publication of notice of a foreclosure sale. On this ground too, Plaintiff has failed to state a claim upon which relief may be granted.

Chapter 93A declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A § 2(a). Individuals have a private right of action via Chapter 93A, Section 9. To prove a claim under Chapter 93A, a plaintiff must show "that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011). Conduct may be considered deceptive when it has "[t]he capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." Foley v. Wells Fargo, N.A., No. 13-cv-12107-LTS, 2017 WL 1591835, at *8 (D. Mass. May 1, 2017) (quotation omitted). To determine whether conduct is unfair, courts look to "(1) whether the

practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Id. (quotation omitted).

Plaintiff alleges that the filing of the servicemember action constituted an unfair or deceptive act or practice. Beyond failing to show how such filing resulted in any loss of money or property, Plaintiff also fails to articulate in other than conclusory fashion how such filing—intended to ensure the preservation of the rights of any servicemembers—rose to the level of "immoral, unethical, oppressive, or unscrupulous." As a result, Plaintiff cannot recover on any of the three alternative theories articulated in Counts 10 and 11.

Next, Plaintiff asserts in Counts 11, 13, and 16 that the filing of a servicemember action is a violation of paragraph 22 of the Mortgage, and thus constitutes a breach of contract and the implied covenant of good faith and fair dealing. Paragraph 22 states that the "[l]ender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration or sale." Defs.' Mot. Dismiss, Ex. A ¶ 22 [#43-1]. Nothing in Paragraph 22 prohibits the PennyMac Defendants from filing a servicemember action during the pendency of pre-foreclosure legal proceedings brought by the Plaintiff. Nor does Plaintiff's citation to Pinti v. Emigrant Mortgage Co. save him. In Pinti, the court held that failure to provide a borrower with a notice of the right to file a pre-foreclosure action in accordance with paragraph 22 renders any subsequent foreclosure void. 472 Mass. 226, 240-43. Plaintiff has not alleged that the notice he received in March of 2015 failed to inform

him of the right to file a pre-foreclosure action. Indeed, Plaintiff has exercised that right three times. Thus, the filing of a servicemember action could not have breached the Mortgage contract or the implied covenant of good faith and fair dealing. Counts 11, 13, and 16 fail on those grounds.

Plaintiff also argues that the allegedly improperly filed servicemember action gives rise to several tort claims, including defamation, Am. Compl. ¶¶ 188-193 (Count 12) [#14], and intentional infliction of emotional distress, id. ¶¶ 205-208 (Count 14). To state a claim for defamation, a plaintiff must allege "(1) that "[t]he defendant made a statement, concerning the plaintiff, to a third party"; (2) that the statement was defamatory such that it "could damage the plaintiff's reputation in the community"; (3) that "[t]he defendant was at fault in making the statement"; and (4) that "[t]he statement either caused the plaintiff economic loss ... or is actionable without proof of economic loss." Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)). Plaintiff states that various foreclosure publications caused him "humiliations." But the filing of a servicemember action is not a foreclosure proceeding, and therefore is not tied to any alleged foreclosure publications. Nor does Plaintiff set forth with any specificity the "humiliations" he has suffered, or any economic loss to him. Thus, Count 12 claim must fail.

To prove intentional infliction of emotional distress, a plaintiff must show "(1) that [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that [defendant's] actions were the cause of [plaintiff's] distress; and (4) that the emotional distress sustained by [plaintiff] was severe." Yohe v. Nugent, 321 F.3d 35, 42 (1st Cir.

2003). Plaintiff has not—and cannot—show that the filing of a servicemember action falls into the realm of conduct so "extreme and outrageous" as to be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." As a result, Count 14 fails.

Finally, in Count 25, Plaintiff seeks injunctive relief ordering the PennyMac Defendants to dismiss the Servicemembers Action. Am. Compl. ¶ 308 [#14]. But "injunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Payton v. Wells Fargo Bank, N.A., No. 12-cv-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013). And, as noted above, there is no underlying stand-alone cause of action regarding the servicemember action that could support such relief. Thus, Count 25 fails.

Accordingly, the PennyMac Defendants' Motion to Dismiss [#42] is GRANTED with respect to Counts 1-6, 8, 10-14, 16-21, and 24-25. The court reserves ruling with respect to Count 9, and will hold oral argument regarding that claim.

### D. Defendant CitiMortgage

The Amended Complaint asserts the following claims against CitiMortgage: Counts 1, 3-5, 7, 15, 17, and 24.[7] CitiMortgage, like the PennyMac Defendants, has moved to dismiss each of the counts against it pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis of *res judicata* or, in the alternative, failure to state a claim. As set forth below, all three elements of *res judicata* are satisfied with respect to CitiMortgage.

As noted above, the court in the First Action entered a final judgment on the merits by allowing CitiMortgage's motion to dismiss. The parties are also sufficiently identical, given that

---

[7] Although Plaintiff does not specify in Count 25 the defendants against which he asserts his claim for injunctive relief, the relief sought (termination of the servicemembers action filed in 2016) could not apply to CitiMortgage, who has not serviced Plaintiff's mortgage since 2011.

CitiMortgage was named as a defendant in the First Action.[8] Moreover, as with the PennyMac Defendants, several of the claims Plaintiff asserts against CitiMortgage in the instant action are identical to those presented in the First Action. For example, Plaintiff brings a claim under RESPA regarding CitiMortgage's servicing of his mortgage, a claim he raised in the First Action. Compare Am. Compl. ¶¶ 129-135 (Count 5) [#14]; with First Action, Second Am. Compl. ¶¶ 199-208 (Count 4), ¶¶ 239-250 (Count 9) [15-cv-12275, #56]. He also re-asserts a fraud claim regarding CitiMortgage's May 2, 2011, denial of his loan modification request, Am. Compl. ¶¶ 209-213 (Count 15) [#14], and a laches claim, id. ¶¶ 109-115 (Count 3) [#14]. Compare First Action, Second Am. Compl. ¶¶ 186-198 (Counts 2-3), ¶¶ 271-275 (Count 13) [15-cv-12275, #56]. As a result, Counts 3, 5, and 15 are barred by *res judicata*.

Although the remaining counts against CitiMortgage are being brought for the first time, those claims "could have been raised in [the prior] action[s]." Allen, 449 U.S. at 94. Plaintiff now seeks to argue that CitiMortgage's loan modification negotiations and the interest rate it applied violated the FDCPA (and corresponding Massachusetts regulations) and constituted a breach of contract. Am. Compl. ¶¶ 74-100 (Count 1), ¶¶ 116-128 (Count 4), ¶¶ 222-228 (Count 17) [#14]. He also seeks declaratory judgment regarding the total amount of his existing debt on his mortgage. Id. ¶¶ 292-298 (Count 24). Here again, Plaintiff had a "full and fair" opportunity to raise such claims when he complained about the same set of facts in the First Action. As a result, Counts 4, 17, and 24 are barred by res judicata.

Finally, Plaintiff asserts an FDCPA claim against CitiMortgage that is based in part on facts highlighted in prior actions—the applicable interest rate—and in part on a claim already considered on the merits, CitiMortgage's failure to confer with Plaintiff pursuant to Local Rule

---

[8] CitiMortgage was also named as a Defendant in the Second Action, but was dismissed without prejudice due to Plaintiff's failure to serve. See Order [15-cv-13611, #40].

17

7.1 prior to filing the instant motion to dismiss. Am. Compl. ¶¶ 142-153 (Count 7) [#14]. To the extent Count 7 is premised on CitiMortgage's application of a particular interest rate, Plaintiff had a full and fair opportunity to raise such claim in the First Action, and it is therefore barred by *res judicata*. To the extent Count 7 is premised on CitiMortgage's failure to confer with Plaintiff prior to filing the instant motion, the Magistrate Judge in the First Action already considered on the merits, and dismissed, such claim. Elec. Order [15-cv-12275, #97].

Accordingly, because Plaintiff's claims against CitiMortgage are barred by *res judicata* or fail to state a claim upon which relief may be granted, CitiMortgage's Motion to Dismiss [#57] is GRANTED.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Strike [#66] is DENIED, and Defendant CitiMortgage's Motion to Dismiss [#57] is GRANTED. The PennyMac Defendants' Motion to Dismiss [#42] is GRANTED with respect to Counts 1-6, 8, 10-14, 16-21, and 24-25. Because the court finds that oral argument on the underlying merits of Count 9, specifically with respect to whether Plaintiff's allegations state facts sufficient to support a claim that PennyMac violated 15 U.S.C. § 1692c(c), would be instructive, the court reserves ruling on whether Count 9 survives until after such oral argument.

IT IS SO ORDERED.

September 26, 2017 /s/ Indira Talwani
United States District Judge